# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| HILLARD L. THOMAS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3917 |
| | § | |
| BRAZOS COUNTY, TEXAS, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this employment discrimination case is a Motion for

Summary Judgment ("Motion") [Doc. # 30] filed by Defendant Brazos County ("County").

Plaintiff Hillard L. Thomas, proceeding *pro se*,[1] has responded [Docs. # 32 and # 33][2] and

---

[1]  Thomas originally filed his suit *pro se*, but thereafter retained counsel and filed a First Amended [Doc. # 4] and a Second Amended Complaint [Doc. # 9]. Thomas's Second Amended Complaint is the current live pleading. Prior to Defendant filing its motion for summary judgment, Thomas's counsel withdrew, citing a conflict of interest. *See* Order Granting Motion to Withdraw [Doc. # 23]. Thomas now proceeds *pro se*.

[2]  Although the Court is mindful of the challenges facing a *pro se* plaintiff, such parties are still expected to abide by all procedural and substantive law. *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *Birl v. Estelle*, 660 F.2d 592, 592 (5th Cir. 1981). Thomas's Response to Defendant's Motion for Summary Judgment ("Response") [Doc. # 32] is, at best, difficult to follow. It consists of pages of Thomas's explanation of his dispute with his former employer, interspersed with documents – including pages from the County's Motion for Summary Judgment – on which Thomas has highlighted and made various notations. His response is bereft of citation to legal authority and he includes no affidavit or other sworn testimony to support many of the factual assertions he makes in the body of his Response. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) ("[U]nsubstantiated assertions are not competent summary judgment evidence.").

One day after filing his Response, Thomas filed a "Supplemental Response" [Doc. # 33] that largely repeats statements made in his original response and includes, *inter alia*, copies of
(continued...)

the County has replied [Doc. # 34].  The Court has considered these documents, all pertinent

matters of record, and applicable legal authorities.  The Court concludes that Defendant's

Motion for Summary Judgment should be **granted**.

## I.      FACTUAL BACKGROUND

Plaintiff Hillard L. Thomas, an African-American male, was previously employed by

Defendant Brazos County's Sheriff's Office as a correctional officer with the Brazos County

Jail, which houses both male and female inmates. As a Sheriff's Office employee, Thomas

received a copy of the Office's personnel manual, which required, *inter alia*, that employees

abide by all federal, state, and local laws; refrain from fraternizing with inmates or inmates'

family and friends; pay all their debts; and generally behave in a professional manner, both

on the job and off, so as not to "bring discredit" upon themselves or the Office.[3]

---

2       (...continued)
        several state court judgments rendered in state law-based employment discrimination cases
        in Washington, Texas, and Missouri.  *See* Supplemental Response [Doc. # 33], at 3–10.
        Although Thomas has highlighted portions of these documents (which, like the highlighting
        on documents attached to his Response, is not visible on the documents uploaded to the
        Court's electronic filing system), the relevance of these exhibits is unclear.

        The County has objected to several of the documents Thomas attached to his Response,
        claiming they are unauthenticated and contain inadmissible hearsay.  *See* Defendant's Reply
        to Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. # 34], at 1–2.
        Thomas has also failed to offer an affidavit in support of his claims.  *See, e.g.*, *King v. Dogan*,
        31 F.3d 344, 346 (5th Cir. 1994).  However, regardless of the Court's consideration of all
        documents submitted by Thomas, and even if the Court were to construe the statements made
        by Thomas as sworn testimony, he has still failed to meet his burden on summary judgment
        to demonstrate the existence of a genuine issue of material fact.  Thus, the Court does not
        rule on the County's objections.

3       *See* Defendant's Motion for Summary Judgment [Doc. # 30], Ex. 7:  "Supplemental Report
        to Internal Affairs Investigation," at 20–23.

By all accounts, Thomas's tenure with the Sheriff's Office was rocky.  Thomas was disciplined for a variety of infractions during his approximately eighteen months with the Office and Thomas himself has detailed a history of conflict with his coworkers and supervisors.[4]  In 2005, Thomas received warnings for playing music for inmates and for providing inmates with contraband reading material, both in contravention of jail policies. He was also counseled for engaging in "flirtatious speech" with female inmates.[5]  In April 2006, Thomas received a written reprimand for leaving an inmate unattended[6] – an offense for which Thomas admits termination would be appropriate.[7]

In February 2006, Thomas was involved in an automobile accident in College Station, Texas (a Brazos County municipality), with a third party, who happened to be employed by a Sheriff's Office vendor.  Thomas was apparently ticketed for speeding and for driving without auto insurance.[8]  The day after the accident, the victim called the work number listed

---

[4]     *See* Defendant's Motion for Summary Judgment [Doc. # 30], Ex. 1:  Transcript of Thomas Deposition ("Thomas Depo.") [Doc. # 30-2], at 95–105

[5]     *See id.*, Ex. 5:  "Personnel Incident Report"; *see also* Response [Doc. 32], at Doc. # 32-4, 8 (Thomas's Response is not paginated; page cites are based upon the pagination provided by the Court's electronic filing system).  Thomas denies any wrongdoing, claiming that he was unaware of policies regarding music and the reading material, and that he did not behave inappropriately with female inmates.  Thomas Depo. [Doc. # 30-2], at 101, 115, 117.

[6]     *See* Defendant's Motion for Summary Judgment [Doc. # 30], Ex. 3:  "Employee Counseling Record"; *see also* Response [Doc. # 32], at Doc. #  32-4, 12–13.

[7]     Thomas Depo. [Doc. # 30-2], at 103, 105.

[8]     *See* Defendant's Motion for Summary Judgment [Doc. # 30], Ex.: 4:  "Memo to Jail Administrator Wayne Dicky from Lt. David Drosche" ("Drosche Memo") [Doc. # 30-5], at 2; *see also* Thomas Depo. [Doc. # 30-2], at 95.   Thomas admits that driving without
(continued...)

by Thomas on the College Station Police Department accident form and spoke with Lt. David Drosche of the Sheriff's Office.[9]  According to a report filed by Drosche, the victim hoped to get information about Thomas, due to her concerns about obtaining compensation from him for the damage to her vehicle.[10] Drosche thereafter spoke with Thomas, who confirmed the accident and that his insurance had expired a few days earlier.[11]  Thomas was informed by Drosche that his failure to obtain insurance and to pay for the victim's damages could result in disciplinary action from the Sheriff's Office.[12]  Thomas promised to renew his insurance and agreed to make arrangements with the victim to pay for her damages.[13]

Several months later, the victim again contacted Lt. Drosche to inform him that Thomas had failed to make promised payments to her for her auto repairs.[14]  Drosche attempted to contact Thomas directly to remind him of his obligations to the victim, but failed to reach him.  Drosche then sent an email to Thomas's supervisor, Sgt. C.V. Jones, who was previously aware of the situation, asking Jones to "pass a reminder on to Thomas

---

[8]     (...continued)
insurance and failing to fulfill personal financial obligations are violations of Sheriff's Office policies.  *See* Thomas Depo. [Doc. # 30-2], at 87, 91.

[9]     Where Lt. Drosche falls in the Sheriff Office's chain of command is unclear from the parties' submissions, though it appears that Thomas was directly supervised by a sergeant, who may then be supervised by a lieutenant.

[10]    *See* Drosche Memo [Doc. # 30-5], at 1–2.

[11]    *See id.*, at 2; *see also* Thomas Depo. [Doc. # 30-2], at 95.

[12]    *See* Drosche Memo [Doc. # 30-5], at 2; *see also* Thomas Depo. [Doc. # 30-2], at 97.

[13]    *See* Drosche Memo [Doc. # 30-5], at 2–3; *see also* Thomas Depo. [Doc. # 30-2], at 95.

[14]    *See* Drosche Memo [Doc. # 30-5], at 3.

about his pending payment arrangement and possible disciplinary action."[15]  Upon learning

of this, Thomas became greatly offended and confronted Drosche – by email, on the phone,

and in person – about Drosche's "unprofessional" conduct in emailing Jones.  After meeting

with Thomas regarding this incident, Drosche claims that Thomas ultimately apologized for

his behavior[16] and acknowledged his obligations to make payments to the accident victim and

the possibility of facing disciplinary proceedings if he failed to meet those obligations.[17]

A few days later, a male inmate was found in one of the female housing units.  Jail

administrators suspected that a correctional officer, Officer Tiffany Baker, had allowed the

male inmate access to the female unit in violation of jail policies. Thus, an internal affairs

investigation commenced.[18]  This investigation uncovered serious policy violations by

Officer Baker, who was found, *inter alia*, to have engaged in a sexual relationship with a

male inmate.[19]  Baker was ultimately fired and arrested for engaging in improper sexual

activity with a person in custody.[20]

---

[15]     *See* Drosche Memo [Doc. # 30-5], at 3; *see also* Thomas Depo. [Doc. # 30-2], at 95–97; Response [Doc. # 32], at Doc. # 32-4, 19.

[16]     *See* Drosche Memo [Doc. # 30-5], at 3.  Thomas denies having apologized.  *See* Thomas Depo. [Doc. # 30-2], at 98.

[17]     *See* Drosche Memo [Doc. # 30-5], at 3; *see also* Thomas Depo. [Doc. # 30-2], at 97.

[18]     *See* Defendant's Motion for Summary Judgment [Doc. # 30], Ex. 6: "Special Investigative Report" ("IA Report") [Doc. # 30-7].

[19]     *See id.*

[20]     *Id.* at 19; *see also* Defendant's Motion for Summary Judgment [Doc. # 30], Ex. 7: "Supplement [sic] Report to Internal Affairs Investigation."

The investigation also implicated Thomas.  Investigators discovered that Baker was impermissibly passing letters and other contraband between male and female inmates.  One such letter indicated that Thomas was also involved in passing contraband between inmates and stated that Thomas and the author of the letter – an African-American female inmate named Julia Davis – were cousins.[21]  When confronted with this information, Thomas admitted that he and the inmate were related and that he had not notified his supervisor as required.[22]  Investigators also uncovered evidence that Thomas was at least aware of, and complicit with, Baker's arranging contact between male and female inmates, if not actively involved.[23]

Both Baker and Thomas were interviewed by investigators twice during the course of the investigation.  Each time, Thomas was specifically warned – via a "Garrity" warning – that he was not to discuss the investigation with anybody outside of his direct chain of

---

[21]     *Id.* at 5; *see also id.* at 12.

[22]     *See* IA Report [Doc. # 30-7], at 8; *see also* Thomas Depo. [Doc. # 30-2], at 186–87.  In his Response [Doc. # 32], Thomas claims that he and the inmate are not related.  *See* Response [Doc. # 32], at Doc. # 32, 6.  Thomas offers no record citations for this assertion and the claim finds no support in any documents referenced by Thomas in his Response.  *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 * n.7 (5th Cir. 1992)) ("Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment."). "'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)).  Thus, Thomas's unsupported assertion – to the extent it is even relevant to this inquiry – is not evidence and is insufficient to defeat summary judgment.  *See Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence.").

[23]     *See* IA Report [Doc. # 30-7], at 9, 10.

command.[24]  Despite such warnings, Thomas admitted to speaking with Baker about the situation while the investigation was ongoing.[25]

Although Thomas denied any wrongdoing,[26] the investigators concluded that he "lied during [the] investigation and violated the conditions of the 'Garrity' warning by discussing the investigation with [Officer Baker] after being warned not to do so."[27] The investigators further determined that Thomas "passed or . . . knowingly allowed to pass, from inmate to inmate, what would be considered contraband," and stated that the "investigation has also revealed a high level of suspicion that Officer Baker and Officer Thomas allowed or had knowledge of physical contact between male and female inmates, thus creating security breaches within the jail."[28]  Based upon these findings, and Thomas's prior infractions, him employment with the Sheriff's Office was subsequently terminated.[29]

Thomas thereafter sought redress from the Equal Employment Opportunity Commission ("EEOC"), alleging that the County discriminated against him based on his

---

[24]     *See id.* at 7–8, 13–14; *see also* Response [Doc. # 32], at Doc. # 32-2, 8 (Thomas's "Notice of Suspension," stating that he is "prohibited from disclosing information concerning [the internal affairs investigation] to any employee of the department or to any person in the custody of the department").

[25]     IA Report [Doc. # 30-7], at 14; *see also* Response [Doc. # 32], at Doc. # 32-4, 35.

[26]     *See* IA Report [Doc. # 30-7], at 17, 19

[27]     *Id.* at 20.

[28]     *Id.*

[29]     *See* Defendant's Motion for Summary Judgment [Doc. # 30], Ex. 7:  "Supplement [sic] Report to Internal Affairs Investigation" & Ex. 8:  "Notice of Termination."

race.  The Department of Labor and the EEOC rejected his claims.[30]  Thomas also sought

unemployment benefits from the Texas Workforce Commission ("TWC").  The TWC

ultimately determined that the County did not prove that Thomas was terminated for

misconduct and, thus, Thomas was eligible for benefits.[31]

Thomas then filed suit, claiming violations of 42 U.S.C. § 1981 and Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[32]  Brazos County has denied all such

allegations in Thomas's complaint.

## II.   **LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to

make a sufficient showing of the existence of an element essential to the party's case for

---

[30]    *See* Plaintiff's First Amended Complaint [Doc. # 4], Ex. A:  "EEOC Right to Sue Letter."
This exhibit was incorporated by reference into Plaintiff's Second Amended Complaint [Doc.
# 9], the live pleading in this case.  *See* Plaintiff's Second Amended Complaint [Doc. # 9],
¶ 4.

[31]    *See* Response [Doc. # 32], at Doc. # 32-5, 26–34.  "A finding of fact, conclusion of law,
judgment, or final order" of the TWC may not be used as evidence in a lawsuit (except in
suits to enforce payment of unemployment benefits).  TEX. LAB. CODE § 213.007.  Thus, the
Court cannot consider these documents on summary judgment. *See Williams v. Aviall Servs.,
Inc.*, 76 F. App'x 534, 536 (5th Cir. 2003) ("Under Texas law, the Texas Workforce
Commission's findings and conclusions may not be used as evidence in lawsuits.").

[32]    In his Response [Doc. # 32], Thomas appears to be raising, for the first time, a claim that
Brazos County negligently trained employees. *See* Response [Doc. # 32], at 2, 4, [Doc. # 32-
2], at 31 .  Because this charge was not raised in his Second Amended Complaint [Doc. # 9],
it is not properly before the Court. *See Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 114 (5th
Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)) ("A
claim which is not raised in the complaint but, rather, is raised only in response to a motion
for summary judgment is not properly before the Court.").

which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak*, 953 F.2d at 913).  However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response.  *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact

for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the non-moving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case."  *Id.*  In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

III.   **ANALYSIS**

A.   **Thomas's Disparate Treatment Claims**

Thomas claims that the County unlawfully discriminated against him in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, when it allegedly terminated him because of his race.[33]  Although Thomas has asserted claims under two statutory provisions, "the elements of both claims are identical." *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 n.7 (5th Cir. 1994); *see also Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) ("[T]he analysis under both [§ 1981 and Title VII] are identical, the only substantive differences between the two statutes being their respective statutes of limitations and the requirement under Title VII that the employee exhaust administrative remedies.") (internal citations omitted).  Therefore, the Court will employ only one analysis in evaluating Thomas's disparate treatment claims.

In order to overcome the County's summary judgment motion, Thomas must raise a

---

[33]     *See* Second Amended Complaint [Doc. # 9], at 2.

genuine issue of material fact whether the County discriminated against him on the basis of his race. *See* Fed. R. Civ. P. 56(c). Unlawful discrimination under both § 1981 and Title VII may be established through either direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). Direct evidence "proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 897 (5th Cir. 2002). It "includes any statement or written document showing a discriminatory motive on its face." *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 195 (5th Cir. 2001). If a plaintiff provides direct evidence, then the burden shifts to the employer to prove "'by a preponderance of the evidence that [it] would have acted as [it] did without regard to the plaintiff's race.'" *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir. 1990) (quoting *Guillory v. St. Landry Parish Police Jury*, 802 F.2d 822, 824 (5th Cir. 1986)).

Thomas appears to assert that he has direct evidence of discrimination. According to Thomas, the County "openly admitted to discriminate [sic] against [him] based on [his] race" by assuming that Thomas – an African-American – was related to inmate Julia Davis – also an African-American.[34] To the extent Thomas claims that this is direct evidence of discrimination, the Court is unpersuaded. Evidence in the record shows that the Sheriff's

---

[34]     *See* Response [Doc. # 32], at Doc. # 32, 1–2; *see also id.* at Doc. # 32-2, 3 ("[T]he only reason I was suspended was because I was a black officer and a black inmate previously claimed to be related to me."), Doc. # 32-2, 6 (claiming that the Sheriff's Office engaged in "racial profiling" because Thomas is black and a "black inmate claimed to be related to [him]"), Doc. # 32-2, 31 ("The department suspended me based on a racial stereotype . . . because I was the same race as an inmate that was involved in breaking jail house rule [sic]. . . . [T]he department chose to use my racial connection with an inmate to involve me inside an Internal Affairs Investigation.").

Office had reason to suspect that Thomas and Davis might be related, namely, the letter written by Davis suggesting that she was related to a correctional officer she called "T."[35] The fact that Thomas and Davis are both African-American does not lead to the conclusion Thomas asserts. Indeed, even making "inference[]s and presumption[s]," *Sandstad*, 309 F.3d at 897, the Court fails to see how the fact of Thomas's and Davis's shared racial background is evidence of discriminatory animus on the part of the County. Moreover, as is explained more fully below, even if this was evidence of the County's discriminatory motive, the County has offered sufficient evidence that Thomas would still have been subject to termination regardless of his race.[36]

Of course, while Thomas may rely on direct evidence, "because direct evidence is rare in discrimination cases, a plaintiff must ordinarily use circumstantial evidence to satisfy [his] burden of persuasion." *Scott v. Univ. of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998). Because Thomas has not provided sufficient direct evidence of disparate treatment, his claim is analyzed using the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001). Under this test, a plaintiff must initially establish a *prima facie* case of race discrimination, which raises a presumption of discrimination. *Id.*; *see also Rutherford v. Harris County*, 197 F.3d 173, 179–80 (5th Cir. 1999). If successful, the burden then shifts

---

[35]     *See* IA Report [Doc. # 30-7], at 5. Davis's letter also appears to reference Officer Baker, who Davis called "B."

[36]     *See infra* pp. 17–18.

to the defendant-employer to articulate a legitimate, nondiscriminatory reason for its actions. *Okoye*, 245 F.3d at 512. The burden on the defendant at this stage "'is one of production, not persuasion . . . [and] can involve no credibility assessment.'" *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)). If the defendant sustains its burden, "the presumption of discrimination dissipates." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). The burden then "shifts back to the plaintiff to establish: (1) that the employer's proffered reason is not true[,] but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). "The plaintiff bears the ultimate burden of persuading the trier of fact . . . that the employer intentionally discriminated against [him] because of [his] protected status. *Wallace*, 271 F.3d at 220 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a *prima facie* case of race discrimination, Thomas must show "that he: (1) is a member of a protected class, (2) was qualified for [his] position, (3) was subject to an adverse employment action, and (4) . . . shows 'that others similarly situated [but outside the protected class] were treated more favorably.'" *Okoye*, 245 F.3d at 512–13 (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)); *see also*

*Alvarado*, 492 F.3d at 611.  The parties do not dispute that Thomas – an African-American – is a member of a protected class.  The parties also do not contest that Thomas was qualified for his position as a correctional officer or that he suffered an adverse employment action when he was terminated.[37]  Thus, the Court looks to whether Thomas has presented sufficient evidence on the fourth element of a *prima facie* case of race discrimination to survive summary judgment.

To establish this element, a plaintiff may present "circumstantial evidence that [he] has been treated differently than similarly situated non-members of the protected class." *Williams v. Trader Pub. Co.*, 218 F.3d 481, 484 (5th Cir. 2000) (citing *Polanco v. City of Austin*, 78 F.3d 968, 977 (5th Cir. 1996)).  To satisfy the "similarly situated" requirement,

---

[37]     Thomas suggests that he was also subject to an adverse employment action when he was "placed inside an internal investigation."  Response [Doc. # 32], at Doc. # 32-4, 1.  In § 1981 and Title VII cases, an adverse employment action must be an "'ultimate employment decision . . . such as hiring, granting leave, discharging, promoting, and compensating."  *Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004) (quoting *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995)).  "An employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action under Title VII [or § 1981]."  *Banks v. East Baton Rouge Parish School Bd.*, 320 F.3d 570, 575 (5th Cir. 2003) (quoting *Hunt v. Rapides Health Care Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001)).  In fact, the Fifth Circuit has expressly "declined to expand the list of actionable actions," *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998), in order to ensure that the courts not become "enmesh[ed] . . . in 'relatively trivial matters.'"  *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (quoting *Dorsett v. Bd. of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991)).  To that end, the Fifth Circuit has held that "investigating alleged violations of departmental policies and making purportedly false accusations are not adverse employment actions." *Breaux*, 205 F.3d at 158 (citing *Pierce v. Tex. Dep't of Criminal Justice*, 37 F.3d 1146, 1150 (5th Cir. 1994); *Colson v. Grohman*, 174 F.3d 498, 511 (5th Cir. 1999)).  Although *Breaux*, *Pierce*, and *Colson* were decided primarily in the context of § 1983 claims, they apply with equal force to § 1981 and Title VII claims because, if anything, the definition of an adverse employment action may be *broader* under § 1983 than under § 1981 and Title VII.  *Alvarado*, 492 F.3d at 613 (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)).

the situations of the plaintiff and the non-protected class member must be more than similar, they must be "nearly identical."  *Perez v. Tex. Dept. of Criminal Justice*, 395 F.3d 206, 213 (5th Cir. 2004).  Thus, Thomas must demonstrate "'that the misconduct for which [he] was discharged was nearly identical to that engaged in by a [Caucasian] employee whom the company retained.'" *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990) (quoting *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982)).  Moreover, the "alleged comparator employees [must have been] similarly situated from the perspective of their employer at the time of the relevant employment decision[]," *Perez*, 395 F.3d at 209, and the comparator employees' position in organization – *e.g.*, job title, duties, supervisor – should be roughly the same.  *See, e.g.*, *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2007); *see also Ramirez v. Gonzales*, 225 F. App'x 203, 207–08 (5th Cir. 2005); *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991).

In this case, Thomas has pointed to several co-workers as possible comparator employees:

- Thomas alleges that "Officer Pharris" witnessed Thomas passing contraband reading material to an inmate and was aware of rumored impropriety between Officer Baker and a male inmate, but failed to file reports as required by jail policy, and was not terminated.[38]  However, Thomas offers no evidence of Pharris's disciplinary record in support of this assertion.

---

[38]   *See* Response [Doc. # 32], Doc. # 32, 4, Doc. # 32-2, 9–10; *see also* Defendant's Motion for Summary Judgment [Doc. # 30], Ex. 8:  "Notice of Termination," at 1–2 (listing Thomas's failure to report violations of jail policy as one of the reasons for his termination).

- Thomas alleges that "[a] number of officers are currently related to inmates that are housed inside the Brazos County Jail and are still not being suspended and investigated to see if they have violated departmental policy."[39]  Thomas does not name these officers nor offer any record citations for this assertion.

- Thomas alleges that "Nurse Zingerman" witnessed the incident involving the male inmate found inside a female cell block, but that she "was not suspended and placed inside this investigation and her credibility was never questioned although she [like Officer Baker and, allegedly, Thomas] was inside the [female] cellblock [at the time]."[40]  However, Thomas adds that Zingerman also reported the incident to her superiors.[41]

- Thomas alleges that "Officer Benjamin Miller should have been placed inside the investigation because he was documented as the cousin of [the Brazos County inmate involved with Officer Baker]."[42]  However, Thomas offers no evidence in support of this assertion.

- Thomas alleges that the Internal Affairs investigation revealed that Officer Baker had been knowingly engaged in wrongdoing similar to that allegedly engaged in by Thomas prior to her termination, but that Baker was not

---

[39]     *See* Response [Doc. # 32], at Doc. # 32, 6.

[40]     *See id.* at Doc. # 32-2, 3.

[41]     *Id.*; *see also* IA Report [Doc. # 30-7], at 4–5.

[42]     *See* Response [Doc. # 32], at Doc. # 32-2, 7.

terminated at that time due to a "lack of evidence."[43]  Thomas argues that even though Baker was subsequently terminated due to the findings of the Internal Affairs investigators, the fact that she wasn't terminated earlier – when Thomas was terminated for the same conduct – is evidence of the County's discriminatory motive.

- Thomas alleges that "Sgt. Jones, Lt. Walker, and Wayne Dickey[,] the jail administrator," all of who had received a report concerning Baker's possibly improper contact with another inmate several months before the commencement of the Internal Affairs investigation, had a "duty to document [the] incident and determine what steps to take with [O]fficer Baker." According to Thomas, if "Sgt. Jones neglected to perform his assigned duty, [Thomas's] superiors are not allowed to come back and terminate [Thomas] for what had already been reported to [his] superiors and accuse [Thomas] of the same offense that Sgt. Jones, Lt. Walker[,] and Wayne Dickey . . . are guilty of not properly dealing with [failing to report known violations of jail policy]."[44]

- Thomas alleges that his "termination form stressed that not reporting [violations of jail policy] created security breaches and constituted as a just cause for [his] termination."  However, "[a] true breach of security was

---

[43]     *Id.* at Doc. # 32-2, 9.

[44]     *Id.* at Doc. # 32-2, 15.

conducted by officers of the [C]ounty when they allowed an inmate to escape and Sheriff Kirk admitted that no officer was disciplined . . . ."[45]  As support for this assertion, Thomas provides a College Station newspaper article detailing the "mistaken release" of an inmate from the Brazos County jail in 2005 that states that "[n]o disciplinary action had been taken as of [the date of the article]."[46]

Thomas's assertions are insufficient.  Aside from the fact that several putative comparator employees are not identified by name, Thomas has also failed to demonstrate that those he has identified were employed in a similar position as him, were supervised by the same County employees, or were otherwise "similarly situated" to him.  Indeed, at least one proposed comparator employee, Sgt. Jones, is actually Thomas's supervisor.  Thomas has also provided no evidence of many of the putative comparator employees' racial backgrounds and offers no evidence of any employee's disciplinary records. These failures are themselves, fatal to his claim.  *See, e.g.*, *Preston v. Tex. Dep't of Family & Protective Servs*, 222 F. App'x 353, 358–59 (5th Cir. 2007) (sustaining summary judgment for the defendant-employer because the plaintiff "fail[ed] to present any evidence that [other] employees engaged in 'nearly identical' misconduct for which she was terminated" and because the plaintiff admitted to having no personal knowledge about the circumstances surrounding the putative comparator employee's alleged wrongdoing); *see also Freeman v. Tex. Dep't of*

---

[45]     *Id.* at Doc. # 32-2, 17.

[46]     *Id.* at Doc. # 32-2, 18.

*Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Little*, 37 F.3d at 1075 ("[T]he nonmovant cannot satisfy [his] burden [on summary judgment] with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").

However, even if Thomas provided adequate evidentiary support for his claims,[47] his position is still fundamentally flawed.  While Thomas alleges that certain employees engaged in *some* of the conduct for which Thomas was ultimately terminated, he has pointed to no employee who engaged in the totality of conduct leading to Thomas's termination.  *See, e.g.*, *Ramirez*, 225 F. App'x at 208; *Bouie v. Equistar Chems, LP*, 188 F. App'x 233, 237 (5th Cir. 2006); *Edwards v. Grand Casinos of Miss., Inc.*, 145 F. App'x 946, 948 (5th Cir. 2005) (citing *Maniccia v. Brown*, 171 F.3d 1346, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.")).  Thomas has also failed to establish that any putative comparator employee had the same disciplinary record as him.  *See, e.g.*, *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (finding that the lack of evidence that the putative comparative employees had similar disciplinary records as the plaintiff was relevant to determining

---

[47]    In several places throughout his Response, Thomas states that certain named individuals have "agreed to testify" on his behalf.  *See* Response [Doc. # 32], at Doc. # 32-2, 7, Doc. # 32-2, 15, Doc. # 43-4, 39.  Thomas's mere proffers of evidence are insufficient to defeat a motion for summary judgment.  *See Little*, 37 F.3d at 1075 ("[I]n the absence of any proof, [the Court does not] assume that the nonmoving party could or would prove the necessary facts."); *see also Lujan*, 497 U.S. at 888–89 ("[T]he purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of the fact before the lengthy process of litigation continues.").

whether they were "similarly situated"); *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 (5th Cir. 1997) (finding that the plaintiff was not similarly situated to the putative comparator employees because the plaintiff had a prior disciplinary record); *see also Bryan v. Chertoff*, 217 F. App'x 289, 292 (5th Cir. 2007) (noting that the plaintiff failed to "point[] to any individuals who were similarly situated, *i.e.*, had the same disciplinary records as [the plaintiff]"); *Edwards v. Grand Casinos of Miss.*, 145 F. App'x 946, 948 (5th Cir. 2005) (finding that plaintiff was not similarly situated to the putative comparator employee because, *inter alia*, plaintiff had a more serious disciplinary record than the comparator). Hence, Thomas has failed to carry his burden to demonstrate that Brazos County treated a "similarly situated" Caucasian employee differently from him and he has failed to establish a *prima facie* case of race discrimination.

Moreover, even if Thomas could successfully establish his *prima facie* case, he has not adequately responded to the County's "legitimate, non-discriminatory reason for its decision to terminate [Thomas]," *Rachid*, 376 F.3d at 312, namely, that the County had a reasonable, good faith belief that Thomas violated a variety of jail policies.[48] *See Corley v.*

---

[48]    In work rule-violation cases, such as this, "a Title VII plaintiff may establish a *prima facie* case by showing 'either that he did not violate the rule or that, if he did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry*, 55 F.3d at 1090 (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). Thomas admits to much of the conduct underlying the County's decision to terminate him, though he claims that he was unaware that the conduct was wrongful. *See supra* note 5 and accompanying text.  In addition, he has provided no evidence, outside of bare assertions in his Response, raising a question of fact whether he was in violation of jail policies. *See Ramsey*, 286 F.3d at 269 ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary
(continued...)

*Jackson Police Dep't*, 639 F.2d 1296, 1298 (5th Cir. 1981) ("[A] mistaken but good-faith belief that an employee has violated the employer's rule is sufficient to rebut the *McDonnell Douglas* inference that the employee was discharged for impermissible reasons."); *see also Mayberry*, 55 F.3d at 1090–91 (violations of an employer's "Code of Conduct" legitimate grounds for termination). The summary judgment record shows that the County undertook a thorough investigation of Thomas's alleged violations of jail policies – including conducting interviews with inmates, jail employees, and Thomas – before concluding that Thomas had engaged in conduct warranting dismissal. Thomas's position that the investigation itself was mere pretext for discriminatory motive on the part of the County simply finds no support in the record. *See Laxton*, 333 F.3d at 579 ("To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. The plaintiff must rebut each nondiscriminatory reason articulated by the employer. A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.") (internal citations omitted)). Although Thomas may believe that his termination was motivated by discriminatory animus, he has failed to present evidence to raise a question of fact on this issue.[49]

---

[48]    (...continued)
        judgment.") (internal quotation and citation omitted). Moreover, Thomas admits that the findings in the IA Report, if taken as true, would warrant dismissal, regardless of the race of the person involved. *See* Thomas Depo. [Doc. # 30-2], at 137–38, 141.

[49]    Indeed, while Thomas alleges in his Response that racial animus lays at the heart of the
                                                                                (continued...)

Thomas has failed to establish a *prima facie* case of race discrimination.  Moreover, assuming *arguendo* that he had succeeded in establishing a his case, Thomas has provided insufficient evidence to raise a question of fact whether the County's stated, lawful reasons for terminating him were pretext for unlawful discrimination.  Thus, the County is entitled to summary judgment on Thomas's disparate treatment claims under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

### 2.    Retaliatory Discharge

Thomas's claim that Brazos County terminated him in retaliation for his involvement in a protected activity under Title VII also fails.  Title VII retaliation claims are governed by the same *McDonnell Douglas* burden-shifting test applied to Thomas's disparate treatment claim in Section III.C.1, *supra*.  *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005).  "Under that framework, the employee's ultimate burden is to prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose."  *Id*.  However, the employee must first demonstrate a *prima facie* case of

---

49      (...continued)
County's decision to terminate him,  he states in his deposition that he believes the real reason he was terminated was because he confronted his superior, Lt. Drosche, and accused Drosche of being unprofessional with regard to his handling of the aftermath of Thomas's car accident. Thomas Depo. [Doc. # 30-2], at 106.  Personality conflicts or other personal workplace disagreements are not viable grounds to sustain a § 1981 or Title VII disparate treatment claim.  *See Martin v. Kroger*, 65 F. Supp. 2d 516, 536 (S.D. Tex. 1999) ("[A] supervisor's treatment of an employee 'rudely and uncivilly does not amount to an adverse employment action.'") (quoting *Webb v. Cardiothoracic Surgery Assocs., P.A.*, 139 F.3d 532, 540 (5th Cir. 1998)); *see also Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003) ("[I]n the workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold shouldering' to the level of actionable offense.").

retaliation.  *Id.* at 607.  "To establish a *prima facie* case of retaliation, an employee must demonstrate that (1) he engaged in an activity that Title VII protects; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action."  *Lemaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (citing *Harvill v. Westward Commc'ns, LLC.*, 433 F.3d 428, 439 (5th Cir. 2005)).

"Under Title VII, an employee has engaged in protected activity if [he] has (1) 'opposed any practice made an unlawful employment practice [Title VII],' or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'"  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427–428 (5th Cir. 2000) (citing 42 U.S.C. § 2000e-3(a)).  Broadly, "Title VII protects against discrimination on the basis of 'race, color, religion, sex, or national origin.'"  *Smith v. City of Jackson*, 351 F.3d 183, 188 (5th Cir. 2003) (quoting 42 U.S.C. §§ 20002e-2(a)(1)–(2)). Thus, protected activities under Title VII require that an employee express opposition to activity that the employee reasonably believes is discriminatory.  *See Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

Although Thomas accuses the County of a variety of wrongs, he admits in both his deposition and his Response that he never complained that the County was discriminating against him on the basis of his race.[50] Instead, he claims that the County retaliated against him for confronting a superior – Lt. Drosche – regarding the email sent by Drosche to

---

[50]    *See* Thomas Depo. [Doc. # 30-2], at 76–84; Response [Doc. # 32], at Doc. # 32-4, 14.

Thomas's supervisor concerning Thomas's auto accident.[51]   Thomas does not assert that the complained-of incident was fueled by any animus against him due to his race.

Thomas has not provided any evidence that he opposed an activity made unlawful by Title VII, and as such, Thomas cannot be said to have engaged in a protected activity under Title VII.   Therefore, Thomas has not presented summary judgment evidence to establish a *prima facie* case of retaliation under Title VII and Brazos County is entitled to summary judgment on this claim.

**IV.    CONCLUSION**

The Court is sympathetic to Thomas's predicament and recognizes that the loss of his job works significant financial hardship.   It is acknowledged that Thomas asserts that he did not engage in the conduct for which he was terminated and he appears convinced that his termination was due, at least in part, to his race.   However, "a subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983); *see also Little*, 37 F.3d at 1075 ("[T]he nonmovant cannot satisfy [his] burden [on summary judgment] with conclusory

---

[51]    In his Response [Doc. # 32], Thomas states:

> I never stated that the department retaliated against me because I complained about racial discrimination.  This was a mistake on my former attorney's part. I attempted to correct this mistake with the courts when I stated that my retaliation was based on me complaining about Lt. Drosche invading my rights to privacy by disclosing a personal matter such as a specific dollar amount that I was in debt with a private citizen to a third party.

*Id.* at Doc. # 32-4, 14.

allegations, unsubstantiated assertions, or only a scintilla of evidence."). Thomas has provided no evidence that the County's decision to terminate him was impermissibly motivated by racially discriminatory animus. Thus, regardless whether the County reached the correct conclusion concerning Thomas's conduct, the Court is without authority to intervene. *See Pineda v. UPS*, 360 F.3d 483, 489 (5th Cir. 2004) (quoting *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 740 (Tex. 2003)) ("[T]o establish that an investigation into an alleged violation of a workplace policy was a pretext for discrimination, it is 'not sufficient [for the plaintiff] to present evidence that the . . . investigation was imperfect, incomplete, or arrived at a possibly incorrect conclusion. He must show that the reason proffered by [the defendant] is false, *and* discrimination was the real reason.'"). It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 30] is **GRANTED** in its entirety. This case is **DISMISSED WITH PREJUDICE**.

The Court will enter a separate final judgment.

**SIGNED** at Houston, Texas, this 29th day of November, 2007.

_____
Nancy F. Atlas
United States District Judge